UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| CARLOS VASQUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:17CV88-PPS |
| | ) | |
| STEINER ENTERPRISES INC., | ) | |
| MITCHELL FABRICS LLC, | ) | |
| MARCO HOLDINGS LLC, | ) | |
| EA STAFFING SVCS INC. and | ) | |
| RANDALL HOLMES, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This is an employment discrimination case in which the plaintiff, Carlos Vasquez, represents himself. The case is almost four years old with much of the time being consumed by Vasquez's effort to expand the case to parties who had nothing to do with the allegedly discriminatory employment decision. The job he sought, but was not hired for, was as a warehouse specialist with Mitchell Fabrics. To understand the current posture of the case, I need to first explain the complicated procedural background of the litigation.

Vasquez's original complaint named a single defendant, "Steiner Enterprises, Inc. d/b/a Mitchell Fabrics LLC." [DE 1 at 1.] An early motion for summary judgment by Steiner was denied without prejudice while Vasquez was ordered to file an amended complaint adding Mitchell Fabrics LLC as a separate (and necessary) party-defendant.

[DE 38.] This was an effort by me to get the case on track; it was clear, after all, that the proper defendant was Mitchell Fabrics, the entity to whom Vasquez applied for the job.

But rather than name only Mitchell Fabrics, the First Amended Complaint retained Steiner as a separate defendant, and added three more defendants. Subsequent motions have resulted in the dismissal of those three later-added defendants (EA Staffing Svcs Inc., Marco Holdings LLC, and Randall Holmes.) [DE 105]. That left only claims against Steiner and Mitchell. Vasquez's retaliation claim in Count Two has also been disposed of in a prior summary judgment order. [DE 106 at 14.]

Now Steiner is back with another motion for summary judgment attempting to demonstrate conclusively that it is not a viable defendant on Vasquez's remaining claims of race discrimination and age discrimination, found in Counts One and Three of his First Amended Complaint. Because it is clear that Steiner had nothing whatsoever to do with this case — recall that Vasquez's job application was made to Mitchell Fabrics, not Steiner — Steiner's motion will be granted and it will be dismissed from the case. That will leave the case in the posture it should have been in all along: Vasquez versus Mitchell Fabrics.

## Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The determination what material facts are undisputed is obviously

critical in the summary judgment context, and the rule requires the parties to support facts, and disputes of fact, by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*.

As I have noted previously in this case and many others, a motion for summary judgment has been described as the time in a lawsuit to "put up or shut up." *Grant v. Trustees of Indiana University*, 870 F.3d 562, 568 (7th Cir. 2017). The opponent must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial," which means "sufficient evidence favoring the non-moving party to permit a trier of fact to make a finding in [its] favor as to any issue for which it bears the burden of proof." *Grant*, 870 F.3d at 568. Although I must construe all facts in the light most favorable to Vasquez, "[i]rrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine." *Skodras v. Gulf Stream Coach, Inc.*, No. 3:08CV441, 2010 WL 145370, at *1 (N.D.Ind. Jan. 8,

3

2010) (Lee, J.), citing Fed.R.Civ.P. 56(c), (e).  Conclusions must be supported by specific facts, otherwise they 'are not sufficient to avoid summary judgment.'"  *Sinha v. Bradley University*, 995 F.3d 568, 573 (7th Cir. 2021), quoting *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016).

## Undisputed Facts

In my opinion on a previous motion for summary judgment, I observed that Vasquez "does not succeed in supporting his assertion that the facts are genuinely disputed because he fails to either cite to particular contradictory evidence or show that the evidence Mitchell cites does not support the fact or is admissible."  [DE 106 at 6.]  I nonetheless devoted several pages of analysis to Vasquez's attempts to dispute the factual assertions of defendant Mitchell Fabrics, explaining several ways he failed to comply with the requirements of Rule 56(c)(1)(A) and his tendency to "veer[] away from the substance of Mitchell's Statements of Fact into irrelevant and unsupported asides."  [*Id*. at 8.]

This time, having received that explanation in the past, Vasquez will bear the consequences of such failures to appropriately respond to material facts asserted and properly supported by Steiner.  Suffice it to say that his attempts to dispute every one of Steiner's 19 enumerated assertions of fact are replete with the same errors as before, including but not limited to failures to provide citations to particular portions of cited exhibits, exhibits that are inadmissible as irrelevant or hearsay or for lack of foundation,

4

and exhibits that do not support Vasquez's factual assertions or do not contradict Steiner's assertions of fact.

With all this as a backdrop, here are the facts that are supported by admissible evidence, and for which Vasquez fails to establish a genuine dispute:

Mitchell Fabrics is a wholesale/jobber of fabrics and textiles, with a warehouse and inventory of fabric, textiles and related hardware for wholesale distribution. [DE 77-2 at ¶5.] Mitchell has four owners and has 20 full-time employees. [*Id.*] Steiner Enterprises is an engineering company with three owners and 22 full-time employees. [*Id.* at ¶4.] Mitchell Fabrics and Steiner Enterprises occupy adjacent halves of a single building but are wholly distinct and separate corporations with unique federal and state identification numbers engaged in entirely different business operations. [*Id.* at ¶6.]

Thomas Hicks is President of both Mitchell Fabrics and Steiner Enterprises. [*Id.* at ¶¶2, 3.] Randall Holmes was the General Manager of Mitchell Fabrics. [DE 77-4 at ¶2.] From June 15, 2015 until January 2016, Holmes worked in Petersburg, Virginia for Mitchell Fabrics. [*Id.* at ¶9.] During that time, Holmes did not manage Mitchell's day-to-day activities and was not involved in its hiring decisions for warehouse labor. [*Id.* at ¶10.]

In November 2015, Mitchell Fabrics used Indeed.com to list job openings for "warehouse specialist" positions. [DE 77-2 at ¶10.] Mitchell also used personal outreach and references to recruit for and fill positions. [*Id.*] As of January 2016,

5

plaintiff Carlos Vasquez was a 54-year-old African-American man who applied for the Mitchell Fabrics warehouse specialist position through WorkOne, a staffing company. [DE 41 at ¶14.] More than 500 people applied for the warehouse specialist job, and Mitchell hired 9 individuals. [DE 77-2 at ¶17.]

At the time Mitchell first learned of Vasquez's claim of discrimination, Mitchell had 9 warehouse specialists. [DE 77-2 at ¶18.] Of those, one was Asian and two were Hispanic. [*Id*.] Of the 9 newly hired warehouse specialists, three were over the age of 40 and two are older than Vasquez. [*Id*.]

Plaintiff's application was screened and found to meet the minimum qualifications for the warehouse specialist position, and his resume was forwarded to Thomas Hicks. [DE 77-3 at ¶7.] Hicks selected Vasquez for an initial interview. [DE 77-2 at ¶11.] Prior to the interview date of January 13, 2016, Vasquez received a phone call from Shannon Goff, Mitchell's Controller, to confirm his interest in the position and to schedule the interview. [DE 77-3 at ¶8.] Goff does not recall ever telling Vasquez that a particular person would conduct the interview. [*Id*. at ¶10.]

Vasquez met with Thomas Hicks on January 13, 2016 for his interview. Hicks conducted the interview alone, and in his capacity as President of Mitchell Fabrics. [DE 77-2 at ¶12.] At the interview, Vasquez discussed his job qualifications in depth. [DE 32 at 2, ¶5.] At the conclusion, Hicks told Vasquez that he liked his ideas and that his references would be used to evaluate him for the warehouse specialist position. [DE 93

6

at 22, ¶10.] During the interview, Hicks made no reference to Vasquez's race or age. [DE 77-2 at ¶13.]

Hicks declares that during the interview Vasquez informed him "that to travel to work he would need to take a bus to a location nearly three-quarters of a mile away and then walk the remainder." [DE 77-2 at ¶15.] Hicks says he decided not to call Vasquez back for a second interview because of concerns about his ability to safely, reliably, and timely arrive at work and because there were other candidates who met the minimum qualifications who did not have this problem. [*Id.*] Vasquez disputes that his work commute was discussed during the interview: "I did not discuss any transportation arrangement for the position with Mr. Hicks nor did Mr. Hicks ever broach the subject [of] personal or public transportation with me." [DE 128 at ¶9.]

Hicks did not consult with anyone in reaching the decision not to select Vasquez for a second interview, and never consulted Randall Holmes about Vasquez as a job applicant. [DE 77-2 at ¶¶16, 19.]

## Discussion

The undisputed facts support a finding that the decision whether or not to hire Vasquez was made by Thomas Hicks, who conducted an in-person interview of Vasquez. Hicks was President of both Steiner and Mitchell. In determining whether Steiner is entitled to judgment as a matter of law, I focus on Steiner's arguments about whether and how Steiner, as opposed to Mitchell, could possibly be liable for any discriminatory hiring decision. In its motion, Steiner addresses two theories which

7

might support Steiner's liability for a discriminatory decision not to hire Vasquez for the job with Mitchell.

One is that in some circumstances, an "agent" of an employer may be liable for discrimination where the agent is delegated sufficient control over the employment of the plaintiff. [DE 114 at 8-9.] The other theory that might support liability of a party who is not the employer is that the party is the alter ego of the employer. [*Id*. at 9.] In my opinion of October 1, 2020 denying Steiner's motion for judgment on the pleadings, I identified these two theories. I noted that Steiner did not address at that time the alter ego and agent liability possibilities, and so had "fail[ed] to demonstrate beyond a doubt that Vasquez cannot prove facts that could support Steiner's liability." [DE 105 at 5-6.] Now in the summary judgment context, Steiner argues that the evidence of record could not reasonably support its liability on either of those theories.

The Agency Theory

Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees...and any agent of such a person." 42 U.S.C. §2000e(b). It is plain that Thomas Hicks acted solely as the agent of Mitchell Fabrics when he interviewed Vasquez and decided not to hire him to work for Mitchell. This conclusion is indisputable: the advertisement on Indeed.com was placed there by Mitchell; the job opening was with Mitchell; Hicks was interviewing Vasquez in his capacity as the President of Mitchell; and his role as President of Steiner had nothing to do with the decision about who to hire for a job at Mitchell. Vasquez offers no evidence

8

to the contrary. And thus these facts defeat an agency theory for Steiner's liability for the hiring decision, because they demonstrate that Hicks (the decisionmaker) did not act as an agent of Steiner in deciding not to hire Vasquez. Hicks acted entirely on behalf of Mitchell Fabrics, against whom Vasquez's claims of discrimination remain pending.

The Alter Ego Theory

The Seventh Circuit has agreed that where two companies are alter egos, "a parent (or other affiliate) would be liable for the torts…of its subsidiary, [and] it ought equally to be liable for the statutory torts created by federal antidiscrimination law." *Papa v. Katy Industries, Inc.*, 166 F.3d 937, 941 (7th Cir. 1999). But "[t]he corporate veil is pierced, when it is pierced, not because the corporate group is integrated,…but (in the most common case) because it has neglected forms intended to protect creditors from being confused about whom they can look to for the payment of their claims." *Id*. at 943. Vasquez's complaint expressly alleges that Steiner and Mitchell are alter egos of a single business entity. [DE 41 at ¶¶1, 3.] In opposition to the summary judgment motion, Vasquez reiterates his contention that Mitchell is an alter ego of Steiner, adding that Mitchell is "fully owned and controlled by Tom Hicks." [DE 128 at ¶12.] But the evidence Vasquez cites does not support his conclusions and is almost entirely (except for marketing material published by Steiner itself) properly objected to as hearsay. [DE 124-12, 124-13 and 124-14; DE 126 at 2.]

Steiner and Mitchell are Indiana corporations. [DE 48 at ¶¶3, 6; DE 67 at ¶¶3, 6.] Indiana law governs the alter ego determination. *Bridge v. New Holland Logansport, Inc.*,

9

815 F.3d 356, 364 (7th Cir. 2016).  Many factors can be relevant in determining whether the "corporate veil" may be pierced, "but the focus is on whether 'the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice.'"  *Id.*, quoting *Reed v. Reid*, 980 N.E.2d 277, 301 (Ind. 2012) (internal citation omitted).  "Courts are reluctant to disregard corporate identity," and Vasquez has the burden on what is described as a "highly fact-sensitive question."  *CBR Event Decorators, Inc. v. Gates*, 962 N.E.2d 1276, 1281-82 (Ind.Ct.App. 2012).

Evidence of such misuse of the corporate form might include circumstances such as undercapitalization, the absence of corporate records, fraud by corporate shareholders or directors, use of the corporation to "promote fraud, injustice, or illegal activities," commingling of the companies' assets and affairs, and conduct by the corporations ignoring corporate formalities.  *Id.* at 1282.  Vasquez has offered no evidence, much less admissible evidence, of any such circumstances.  Two companies can "do a fair amount of sharing" and have "a certain degree of integration between the two corporations" and still there be no suggestion that the corporate form has been misused.  *Bridge*, 815 F.3d at 364.  "[S]eparate corporate identity" can only "be disregarded where one corporation is so organized and controlled and its affairs are so conducted by another corporation that it is a mere instrumentality or adjunct of the other corporation."  *Reboy v. Cozzi Iron Metal, Inc.*, 9 F.3d 1303, 1308 (7th Cir. 1993), quoted in *Bridge*, 815 F.3d at 365.

10

The fact that Tom Hicks happens to be the President of both corporations and that the two share a building are patently insufficient to support an alter ego conclusion. These are the only commonalities demonstrated by the admissible evidence of record. Vasquez acknowledges that the job he sought was with Mitchell. [DE 41, ¶¶1, 14.] Vasquez's ruminations about Steiner being used to segregate applicants by race or to otherwise apply a predetermination to discriminate against applicants based on race are unsupported by any evidence. In his amended opposition [DE 128], Vasquez focuses largely on his claims about comparisons among the various candidates for the warehouse specialist position, and those ultimately hired, as well as his contention that Hicks' professed concern about Vasquez's transportation to work was a pretext. Whatever the facts in that regard, they are not pertinent to a determination whether and why *Steiner* would be liable for any discrimination in hiring by Mitchell.

As the Seventh Circuit observed in *Papa*, "there is no argument for making one affiliate liable for the other's independent decision to discriminate." *Papa*, 166 F.3d at 942. Even in the case of formally related corporations (which Steiner and Mitchell have not been shown to be), it "is nonsense" to think that unless "a Chinese wall [is erected] between affiliates, each affiliate is responsible for the other's debts." *Id*. at 943. On the record before me, no reasonable fact finder could conclude that Steiner and Mitchell were one enterprise in disguise, that violations of the corporate form render Steiner liable for any discrimination by Mitchell, or that Steiner was somehow responsible for any discriminatory action taken on behalf of Mitchell in the hiring process.

**Conclusion**

If Carlos Vasquez was aggrieved by unlawful discrimination, it was done to him by Mitchell Fabrics, not Steiner. Therefore, Steiner Enterprises is granted judgment as a matter of law because Vasquez has failed to demonstrate the existence of any dispute of material fact precluding judgment in favor of Steiner, which is not shown to have had any responsibility for the hiring decision by Thomas Hicks in his role as President of Mitchell Fabrics. Neither has Vasquez adduced admissible evidence that might support Steiner's liability as an agent of Mitchell or as the alter ego of Mitchell. These reasons are enough, and I do not address additional arguments Steiner makes in support of its motion, particularly as they foreshadow issues pertaining to the potential liability of Mitchell for discrimination on the remaining claims.

**ACCORDINGLY:**

Plaintiff Carlos Vasquez's motion [DE 127] to amend/correct his response to defendant Steiner Enterprises' motion for summary judgment is GRANTED, and Vasquez's "Supplemental Filing" filed as DE 128 will be deemed substituted for his earlier-filed "Response" filed as DE 123.

Defendant Steiner Enterprises' Motion to Strike Evidence Submitted in Response to Motion for Summary Judgment [DE 126] is DENIED except as evidentiary rulings on particular exhibits are addressed in the court's opinion.

Defendant Steiner Enterprises' Motion for Summary Judgment [DE 113] is GRANTED.

**SO ORDERED**.

ENTERED: November 2, 2021.　　　　　/s/ Philip P. Simon
　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**